

AO 91 (Rev. 11/11) Criminal Complaint

AUSA Saqib Mohammad Hussain (312) 353-1414

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MATTHEW BARRAZA,
    also known as "BABY 8"

CASE NUMBER: 26 CR 64

**UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about January 15, 2026, and continuing to on or about February 5, 2026, at Bolingbrook, Illinois, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | distribution of a controlled substance (cocaine) |
| Title 18, United States Code, Sections 922(a)(1)(A) and 922(o) | unlicensed dealing in firearms and possession of a machinegun |

This criminal complaint is based upon these facts:

 _X_  Continued on the attached sheet.

*Daniel Domke*

DANIEL DOMKE
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: February 18, 2026

*Laura K. McNally*

box SIGN    4Q73KTRV5XLPYW96
*Judge's signature*

City and state: Chicago, Illinois

LAURA K. MCNALLY
U.S. Magistrate Judge
*Printed name and title*

FILED
TD
2/18/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, DANIEL DOMKE, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so employed since December 2022. My current responsibilities include the investigation of federal firearms offenses, including the unlawful possession of firearms or ammunition by convicted felons, firearms and narcotics trafficking, and violent crime.

2. I received approximately twenty-six weeks of criminal investigative training from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and graduated from the Criminal Investigator Training Program (CITP) and ATF Special Agent Training (SABT). I have also participated in investigations, which included the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, the execution of search and arrest warrants on both physical and digital environments, including the use of court-ordered intercepts of wire and/or electronic communications, dialed number recorders (pen registers), telephone toll analysis, the arrests of drug traffickers, and the analysis of seized records, physical evidence, and taped conversations. These investigations have involved one, or all, of the following crimes: possession, distribution, possession with intent to distribute, and manufacture of controlled substances, and related laundering of monetary instruments. I have also spoken with confidential informants

who have extensive knowledge of the inner workings of major narcotics trafficking organizations. Through these investigations and training, I am familiar with the operations of drug trafficking organizations in the United States.

3.      The facts set forth in this affidavit are based on my personal knowledge, my training and experience, information provided to me by other law enforcement personnel, review of consensual recordings, and physical surveillance. The investigation to date has included the use of consensually recorded telephone and in-person conversations. The summaries of recorded conversations in this affidavit do not include reference to all the topics covered during the conversations. Quoted material from the recorded conversations as set forth in this affidavit is taken from draft summaries, not final transcripts. In certain instances, conversations are summarized and placed in context, and my interpretations of the conversations are included in brackets. My understanding and interpretation of these conversations is based upon by the contents and context of the conversations, my familiarity with the facts and circumstances of this investigation, my experience as a law enforcement officer, my discussions with other law enforcement officers, the experience of other law enforcement agents and officers in this investigation, and other evidence developed during the course of the investigation.

4.      This affidavit is submitted in support of a criminal complaint alleging that Matthew BARRAZA, also known as "BABY 8," has violated Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), and Title 18, United States Code, Sections 922(a)(1)(A) (unlicensed firearms dealings) and 922(o)

(possession of a machinegun) (collectively, the "**Subject Offenses**"). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging BARRAZA with violating the **Subject Offenses**, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

5.     This affidavit is based on my personal knowledge, my training and experience, my review of audio and audio-video recorded conversations, law enforcement records and reports, court documents, as well as other information provided to me by other law enforcement agents and confidential sources.

**A.     Summary**

6.     As detailed below, between in or around January 2026 and continuing to in or around February 2026, BARRAZA, via text message, offered to sell a firearm fitted with a machine-gun conversion device (MCD) and cocaine to individuals, who, unbeknownst to him, were undercover law enforcement officers (hereinafter, "UCO-1" and "UCO-2").

7.     On February 5, 2026, BARRAZA drove to Gas Station A in Bolingbrook, Illinois, where he parked his vehicle, and entered UCO-1's undercover vehicle (UCV).

Inside the UCV, BARRAZA handed a Glock, Model 23, .40 caliber pistol affixed with an MCD and 127 grams of suspect cocaine to the UCOs in exchange for $5,600.[1]

**B.      January 2026: BARRAZA, via text message, offered to sell a fully automatic firearm to UCO-1.**

8.      On or about January 26, 2026, BARRAZA using a phone number ending in -2922 (hereinafter, "BARRAZA's Phone 1"),[2] sent a text message to UCO-1, which stated, "Fully."[3] UCO-1 replied, "Wat kind," to which BARRAZA messaged, "VSKA MICRO DRAKE shell catcher & swish."

9.      Based on my training and experience, the training and experience of other law enforcement officers familiar with investigating firearms trafficking, and

---

[1] In addition to the February 5, 2026 controlled purchase described in this affidavit, UCO-1 conducted approximately three additional in-person controlled purchases of firearms and/or narcotics with BARRAZA on or about January 6, January 12, and January 15, 2026, which were audio-video recorded by UCO-1 and concealed recording devices in the UCV.

[2] This affidavit refers to BARRAZA as the identified user of phone number ending in-2922 based upon (1) T-Mobile records, which list Matthew BARRAZA as the subscriber (2) BARRAZA selling firearms of the same type for the same price that the user of BARRAZA's Phone 1 agreed to sell UCO-1 prior the January 12, January 15, and February 6, 2026 controlled sales, and (3) law enforcements' review and comparison of recorded phone calls between UCO-1 and the male voice on BARRAZA's Phone 1 and BARRAZA's voice during audio-video recorded, in-person, controlled purchases between UCO-1 and BARRAZA during the controlled sales referenced above.

[3] Certain text message and phone conversations referenced in this affidavit have been recorded and preserved. This affidavit does not notate every communication between BARRAZA and the UCOs. Instead, the conversations are summaries of the communication. Where recorded conversations are discussed in this affidavit, the language that is quoted from the recorded conversations is based upon a preliminary review of the recorded conversations and not on final transcripts of the recorded conversations. Summaries and excerpts do not include all statements or topics covered during the course of the conversations. At various points in the affidavit, I have also included, either in brackets or summary form, my interpretation of words and phrases used in conversations. My interpretations are based on the contents and context of the conversations, events occurring before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

my familiarity with this investigation, the term "fully" is street terminology for a fully automatic firearm, and the term "swish" is street terminology for an MCD. During this conversation, in summary, I believe that BARRAZA offered to sell UCO-1 a Drako-style pistol fitted with an MCD allowing the pistol to function fully automatically, meaning to fire multiple rounds with a single pull of the trigger.

10.     On or about January 27, 2026, BARRAZA's Phone 1, messaged UCO-1 an image of a Draco-style pistol, as depicted in the below image:



In response, UCO-1 texted BARRAZA's Phone 1, "U sure it fully," and, "I'm interested bro, but not if it dont go fully." BARRAZA messaged back, a video of an unidentified individual firing multiple rounds of a Draco-style pistol and the message, "It's fully 100."

11.     Based on my training and experience, the training and experience of other law enforcement officers familiar with investigating firearms trafficking, and my familiarity with this investigation, during this conversation, in summary, I believe that BARRAZA sent UCO-1 an image of the firearm BARRAZA offered to sell

5

UCO-1. UCO-1 replied that he only wanted the firearm if it was a fully automatic weapon, meaning capable of firing multiple rounds with a single function of the trigger. BARRAZA confirmed that it was a fully automatic weapon.

**C.** **February 5, 2026: BARRAZA coordinated an in-person sale of cocaine and an MCD-enabled firearm to the UCOs.**

12. On or about February 1, 2026, BARRAZA's Phone 1 messaged UCO-1 a video of a Glock handgun with an MCD attached. A still image from the video with the MCD attachment encircled in red is set forth below:



13. UCO-1 responded via text message, "Hell yeah- ticket?" to which BARRAZA's Phone 1 responded "18 for the 35."

14. Based on my training and experience, the training and experience of other law enforcement officers familiar with investigating firearms trafficking, and my familiarity with this investigation, during this conversation, in summary, I believe that BARRAZA sent UCO-1 a video of a firearm fitted with an MCD that BARRAZA offered to sell UCO-1. UCO-1 asked BARRAZA how much it cost and BARRAZA responded $1,800.

15. On or about February 4, 2026, UCO-2 messaged BARRAZA's Phone 1, "What's the price for 4 and baby?" BARRAZA's Phone 1 replied, "3.6 went a lil up but that's still deal I'm charging 38 for ppl by me." UCO-2 replied, "Run it. Let's do it."

16. Based on my training and experience, the training and experience of other law enforcement officers familiar with investigating drug trafficking, and my familiarity with this investigation, during this conversation, in summary, I believe that UCO-2 asked BARRAZA how much it would cost to purchase four and a half ounces of cocaine. BARRAZA replied that it would cost UCO-2 $3,600. BARRAZA explained further that $3,600 was $200 less than BARRAZA charges customers who live near BARRAZA. UCO-2 replied that he would do the deal.

17. On or about February 5, 2026, UCO-1 messaged BARRAZA's Phone 1 regarding meeting both UCOs to complete the firearms and narcotics transaction. BARRAZA, using BARRAZA's Phone 1, messaged UCO-1 to meet at Gas Station A in Bolingbrook, Illinois, after 6:00 p.m., that day.

18. On February 5, 2026, at approximately 7:56 p.m., law enforcement officers conducting surveillance in the area of Gas Station A, observed a black Lincoln SUV [4] enter Gas Station A. UCO-1 and UCO-2 then arrived in the UCV, which UCO-1 parked in Gas Station A.

---

[4] According to law enforcement reports and the UCOs, BARRAZA arrived to the January 12 and January 15, 2026 controlled firearm and narcotics sales in the same Lincoln SUV. According to Illinois Secretary of State records, the Lincoln SUV is registered to Individual A.

19. At approximately 7:58 p.m., officers conducting surveillance then observed a Hispanic male identified as BARRAZA[5] exit the black Lincoln SUV and enter the UCV's front passenger seat. Inside the UCV, according the UCOs and a concealed audio-video recording device, the following occurred:

a. BARRAZA reached into his sweatshirt and removed a Glock, Model 23, .40 caliber handgun bearing serial number VCM091 with MCD affixed and an extended magazine containing 19 rounds of .40 caliber ammunition.

b. BARRAZA handed the firearm to UCO-1. UCO-1 stated, "You wanted 18 [$1,800] for that?" referring to $1,800. BARRAZA replied, "I told you two more, two more dollars," meaning an extra $200 for a total of $2,000.

c. BARRAZA then pointed to the MCD affixed to the firearm and stated, "This is one of the official first switches." BARRAZA also stated, "That's the first one they came out with." BARRAZA then stated that, "That bitch will do it." Based on my training and experience and the training and experience of other officers familiar with firearms trafficking, and based on my familiarity with this investigation, I believe that BARRAZA explained that the MCD attached to the firearm was an earlier model MCD and that it would make the firearm fire multiple rounds of ammunition with a single pull of the trigger.

d. BARRAZA then removed a clear plastic bag containing a chunky white substance from his front right sweatshirt pocket and handed it to UCO-2.

---

[5] Law enforcement officers identified BARRAZA based on BARRAZA's physical appearance matching the physical appearance of BARRAZA's known driver's license photograph on file with the Illinois Secretary of State.

e. UCO-1 handed BARRAZA $2,000 in prerecorded funds for the firearm.

f. UCO-2 handed BARRAZA $3,600 in prerecorded funds for the suspect cocaine.

20. According to surveillance and the audio-video recording, at approximately 8:02 p.m., BARRAZA exited the UCV, entered the black Lincoln SUV, and drove away.

21. The white powdery substance that BARRAZA handed UCO-2 weighed approximately 127 grams and field-tested positive for the presence of cocaine. Law enforcement submitted the substance for further laboratory testing, which remains pending.

22. According to ATF records, BARRAZA is not a registered federal firearms licensee.

23. The Glock pistol with the MCD attachment, extended magazine, and associated ammunition that BARRAZA sold UCO-1 on or about February 5, 2026, is depicted below:



## D. CONCLUSION

24. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, beginning no later than on or about January 26, 2026, and continuing until at least on or about February 5, 2026, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, Matthew BARRAZA, did knowingly and intentionally distribute a controlled substance, namely a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). I further conclude that there is probable cause to believe that, on or about February 5, 2026, Matthew BARRAZA did knowingly engage in the unlicensed dealing of firearms and did knowingly possess a machine gun, in violation of Title 18, United 21, United States Code, Sections 922(a)(1)(A) and 922(o), respectively.

FURTHER AFFIANT SAYETH NOT.

*Daniel Domke*

DANIEL DOMKE
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone on February 18, 2026.

*Laura K. McNally*

Honorable LAURA K. MCNALLY
United States Magistrate Judge

10